UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

ASIA TV USA LTD.                                           CASE NO.:


                    Plaintiff,

                                                           COMPLAINT

          vs.

MASSY COMMUNICATIONS LTD.;
TELECOMMUNICATIONS SERVICES OF
TRINIDAD & TOBAGO LIMITED;
AMPLIA COMMUNICATIONS LTD.,


                    Defendants.
_____X


          Plaintiff ASIA TV USA LTD. ("ATUL" or "Plaintiff"), through its attorney Megha D.

Bhouraskar, brings these claims against MASSY COMMUNICATIONS LTD ("MASSY"),

TELECOMMUNICATIONS SERVICES OF TRINIDAD & TOBAGO LIMITED ("TSTT") and

AMPLIA COMMUNICATIONS LTD. ("AMPLIA") and alleges as follows:


                              INTRODUCTION

          1.      This is an action to recover damages for various causes of action such as breach

of contract, fraud, breach of implied covenant of good faith and fair dealing, trademark

infringement, copyright infringement, inducement, and contributory infringement. This action

arises from Defendant MASSY's failure to fulfill its payment obligations under the Term Sheet

(defined below) and Amendment No.1 to the Term Sheet (defined below) in exchange for

receiving the Plaintiff's Content (defined below); from MASSY assigning its rights to a third

party without Plaintiff's consent; from the broadcast and airing for distribution, and the

marketing, of Plaintiff's Content by AMPLIA without the consent of Plaintiff; and, from the

control and assistance of TSTT in the infringing conduct of AMPLIA.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to Section 39

of the Lanham Act (15 U.S.C. § 1121); also pursuant to multiple federal statutes including but

not limited to, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332(a)(2) (diversity

jurisdiction), 28 U.S.C. § 1338 (jurisdiction over copyright actions and trademark actions); and

pursuant to the U.S Copyright Act, 17 U.S.C. §§ 101 *et seq.;* and The Lanham Act, 15 U.S.C. §§

1051 *et seq.*

3.      Plaintiff ATUL has its corporate offices in the State and County of New York and

New Jersey and was formed in the state of Wyoming; Defendants MASSY, TSTT and AMPLIA

are, upon information and belief, citizens of Trinidad & Tobago; and, the amount in controversy,

exclusive of interest and costs, exceeds $75,000. Therefore, diversity jurisdiction exists.

4.      This court has personal jurisdiction over the parties because the Plaintiff who was

injured is in New York and, the parties conducted a significant part of their negotiations to

conclude the deal [which is the underlying subject matter] in New York. The parties met in New

York and Defendant MASSY had a representative who was present in New York for the

meeting.

5.      Venue is properly found in this court pursuant to 28 U.S.C. § 1391(a), (b)(2),

(c)(3) and (f)(1), because a substantial part of the events giving rise to these claims set forth

herein took place in the State and County of New York, as the parties met for business in New

York and witnesses to the events are in New York.

## THE PARTIES

6.     ATUL has its corporate offices in the State(s) of New York, at 350 5th Ave, Suite

7240, New York, NY 10118 and in New Jersey, at 200 Middlesex Essex Turnpike, Suite 202,

Iselin, NJ 08830 respectively; the company was formed under the laws of the State of Wyoming.

7.     Upon information and belief, Defendant MASSY, at all relevant times was and is

a company in Trinidad & Tobago with a principal place of business at LP 81A El Socorro,

Extension Road South, El Socorro, San Juan, Trinidad & Tobago.

8.     Upon information and belief, at all relevant times, Defendant MASSY [i.e. Massy

Communications Ltd] was held by the Massy Group ("MASSY GROUP"), which provides a

variety of products and services, including retail, insurance, automotive, information technology,

energy, and industrial equipment in the Caribbean region which includes Trinidad & Tobago.

10.    MASSY GROUP held various companies/ subsidiaries including Defendant

MASSY.

11.    Upon information and belief, Defendant MASSY, at all relevant times was and is

in the business of providing many different products and services, and for the purposes of this

Complaint, was in the business of providing fiber internet and digital television services in

Trinidad & Tobago.

12.    Upon information and belief, Defendant MASSY, at all relevant times, gained

economic benefit by broadcasting the Indian media and entertainment content in Trinidad and

Tobago belonging exclusively to the Plaintiff ATUL.

13.     Upon information and belief, Defendant TSTT is a company based in Trinidad & Tobago with its place of business at TSTT House, 1 Edward Street, Port of Spain, Trinidad & Tobago.

14.     Upon information and belief, Defendant TSTT is in the business of providing telecommunications services to residential and commercial markets in Trinidad & Tobago.

15.     Upon information and belief, Defendant AMPLIA is a company based in Trinidad & Tobago with a place of business at LP 81A El Socorro Extension Road, San Juan, Trinidad and Tobago.

16.     Upon information and belief, at some time during the relationship between Plaintiff ATUL and defendant MASSY, Defendant TSTT acquired 100% shareholding of MASSY.

17.     Upon information and belief, TSTT subsequently renamed the business (MASSY) which it bought from MASSY GROUP. It changed the name from 'MASSY' to 'AMPLIA'.

18.     Upon information and belief, even after TSTT bought MASSY, the office address of AMPLIA remained the same as the [prior] office address of MASSY: LP 81A El Socorro Extension Road, San Juan, Trinidad and Tobago.

## BACKGROUND AND FACTS

19.     The acts complained of herein have arisen out of the same common scheme or plan to violate the Plaintiff's rights, or the same transaction, occurrence, or series of transactions or occurrences, and there are questions of law and fact common to all Defendants, which arise in this action.

20.     This is a straightforward case of: (i) breach of contract, fraud and breach of implied covenant if good faith and fair dealing by Defendant MASSY; (ii) willful copyright infringement and violation of the Lanham Act by Defendant AMPLIA, involving the unauthorized distribution of Zee Content (as described below) and Atul Media Content (as described below) belonging to the Plaintiff; and, (iii) contributory infringement of Plaintiff's trademark, copyrights and exclusive rights by Defendant TSTT.

## PLAINTIFF'S BUSINESS

21.     ATUL is engaged in the media and entertainment business, and distributes the Zee Content (as described below).

22.     The Zee Content comprises of "Zee" branded premium cable television programming channels, which include movies and television mini-series, musical specials, sporting events, life style, news and health, and other variety shows, primarily related and focused on South Asian entertainment, in various Indian languages ("Zee Content").

23.     The Plaintiff has exclusive distributorship of the Zee Content in the United States and its Territories and the Caribbean ("Territory").

24.     The Zee Content includes the stylized "Zee" and "Z" logos, as well as the trade names and trademarks of "Zee" and "Z" (collectively, the "Registered Marks"), which Plaintiff has the exclusive rights to display and distribute in the Territory. Plaintiff has duly filed trademark applications in the Territory [and including, in Trinidad & Tobago] and has already received three of the four Trademark Certificates while it is awaiting the fourth Certificate. Attached as **Exhibit G** and **Exhibit H**, copies of Trademark Certificates received in the U.S and Trinidad & Tobago.

## DEFENDANTS' BUSINESS

25.     Upon information and belief, at all relevant times, Defendant MASSY is/was in the business of offering telecommunication services in Trinidad & Tobago. MASSY provides/provided: (1) fiber optic (FTTH) infrastructure deployment which is utilized to deliver high speed internet and IPTV to residential and SME customers; (2) dedicated Internet/IP transit; (3) clear channel domestic/ metro Ethernet and international private lines; and (4) international wholesale termination and enterprise voice solutions.

26.     Upon information and belief, Defendant TSTT is in the business of providing communications solutions to the residential and commercial market.

27.     Upon information and belief, on or about July 31, 2017, TSTT acquired 100% shareholding in MASSY, one of the companies held by MASSY GROUP. Subsequently, after said acquisition, TSTT renamed the acquired company from 'Massy Communications Ltd.' to 'Amplia Communication Ltd'.

28.     Upon information and belief, Defendant AMPLIA is the operator of the internet web site http://amplia.co.tt/digital-tv/.

29.     Upon information and belief, Defendant AMPLIA is in the business of providing telecommunications services in Trinidad and Tobago and has a wide fiber-optic network infrastructure in Trinidad & Tobago.

## THE PARTIES' PAST RELATIONSHIP

30.     On December 22, 2015, Plaintiff entered into a term sheet with Defendant MASSY for the term commencing January 1, 2016 to March 31, 2019, for the licensing of the

Atul Media Content (defined below) for the territory of Trinidad & Tobago, hereinafter referred to as the "Term Sheet". Annexed hereto as **Exhibit A** is the Term Sheet[1].

31.     Plaintiff ATUL licensed broadcasting rights under the Term Sheet to Defendant MASSY for the following channels: Zee TV, & TV HD, Zee Cinema, Ten Cricket, Zing, Zee News and Zee World for the territory of Trinidad & Tobago ("Plaintiff's Content" or "Atul Media Content").

32.     Defendant MASSY agreed to make payments to Plaintiff ATUL as per 'Table A' attached to the Term Sheet ("Table A"). Annexed hereto as **Exhibit B** is Table A[2].

33.     Plaintiff ATUL and Defendant MASSY entered into the Term Sheet subject to, amongst other conditions, the following: (i) the 3 years' minimum guarantee payments to be made by MASSY to ATUL; (ii) the stringent payment terms from MASSY to ATUL; (iii) exclusivity requirement for MASSY to show only Zee channels which excludes other Indian channels; and, (iv) the possibility of early termination by MASSY at the end of month 24th after MASSY paying ATUL for the prorated value from the period that is remaining.

34.     Upon mutual agreement, mid 2017, an 'Amendment No.1' was mutually entered into by the parties, ATUL and MASSY, which amended the Term Sheet only to the extent that it replaced the channel 'Ten Cricket' with 'Zee Bollywood' in Plaintiff's Content and also licensed Over-the-top (OTT) rights to Defendant MASSY for the territory of Trinidad & Tobago. Otherwise, all terms from the Term Sheet remained the same ("Amendment No.1") Annexed hereto as **Exhibit C** is the Amendment No.1.[3]

35.     The Term Sheet and Amendment No.1 are hereinafter collectively referred to as the "Distribution Agreement".

---

[1] The commercial terms have been redacted in the Exhibit A for confidential purposes.
[2] The commercial terms have been redacted in the Exhibit B for confidential purposes.
[3] The commercial terms have been redacted in the Exhibit C for confidential purposes.

36.     Plaintiff ATUL duly provided services to Defendant MASSY under the Term Sheet and then the Distribution Agreement by providing access to the signal of Atul Media Content for the Territory.

37.     ATUL routinely invoiced MASSY and these invoices were based on the minimum guarantees agreed under the Term Sheet.

38.     After initial payments were made by Defendant MASSY, MASSY fell into arrears, and would typically pay down the arrears, and, would repeatedly reassure Plaintiff that the payments would be made against the invoices raised by the Plaintiff.

39.     However, from March 2017 onwards, although MASSY kept promising Plaintiff that it would pay and come current with its payments, it never did.

40.     The last payment(s) received from MASSY by Plaintiff was in March 2017 for payments [minimum guarantees] owed for the months of December 2016 and January 2017.

41.     Plaintiff ATUL provided Defendant MASSY with several reminders for making the payments and MASSY repeatedly reassured Plaintiff that the payments were forthcoming.

42.     Defendant MASSY till date has not made any payments towards clearing the outstanding dues.

43.     During the licensing period Plaintiff ATUL had a few planned maintenance upgrades ("Maintenance Service"). The Maintenance Services are standard industry practices where there is a brief disruption of service and are/were performed during the least popular showtime/viewing hours of post-12midnight to 4:00 AM, and, prior notice is/was provided by ATUL to MASSY of the planned Maintenance dates.

44.     Plaintiff ATUL provided an advance notice to Defendant MASSY before conducting the planned Maintenance Service. The planned Maintenance Service is always conducted during a less viewer time (usually after 1:00am).

45.     On September 26, 2017, Defendant MASSY wrote a letter to Plaintiff stating that on 31st July, 2017, the 100% share capital of Massy Communications Ltd. (Defendant MASSY) was acquired by Telecommunications Services of Trinidad & Tobago (Defendant TSTT), hereinafter referred to as "Acquisition Letter".

46.     It is pertinent to note that the Term Sheet had no provision allowing MASSY to sell or assign its rights to distribute Plaintiff's Content to a third party.

47.     Defendant MASSY breached the Distribution Agreement by selling and/or assigning and/or allowing its distribution rights of Plaintiff's Content to AMPLIA/TSTT.

48.     The Acquisition Letter also mentioned about outages for various channels. Defendant MASSY raised these concerns only in the Acquisition Letter and did not ever communicate to Plaintiff prior to this acquisition; and these alleged "outages" were nothing but planned Maintenance Services [with prior notice and during least viewing hours].

49.     On October 26, 2017 MASSY introduced TSTT's team to the Plaintiff's team over a phone-call wherein TSTT expressed interest in renegotiation and agreed to provide a revised proposal to the terms of the Distribution Agreement.

50.     However, Defendants failed in sharing any revised proposal with the Plaintiff and instead, on or about December 15, 2017 sent an unlawful termination letter ("Unlawful Termination Letter").

51.     The Unlawful Termination Letter also stated that Massy Communications Ltd was renamed to AMPLIA Communication Ltd.

52.     Accordingly, ATUL provided a written reply dated January 17, 2018 ("Notice of Default") in response to the Unlawful Termination Letter..

53.     The Notice of Default set forth that the request to terminate the Distribution Agreement was unlawful and are/ were not grounds to terminate without satisfying the financial obligations to ATUL.

54.     The Notice of Default contains a list of 'Outstanding Invoices', with columns for, Invoice Date/Payment Date, Invoice Amount, Payment and Balance, as an 'Appendix A'. ("Appendix A"). Attached as **Exhibit D[4]** is the Appendix A.

55.     The termination of the Distribution Agreement would only be permissible subject to: (i) the Defendants paying the pro-rated value of the remaining term (for the 3-year minimum guarantee ("Minimum Guarantee") and; (2) payment of the outstanding invoices at that time of termination ("Outstanding Dues").

56.     Defendant MASSY till date has not made any payments towards clearing the outstanding dues or for the pro-rated term.

57.     Notwithstanding the alleged "termination" by AMPLIA, Plaintiff's Content continued to be aired by MASSY and/or Defendants AMPLIA and TSTT.

58.     Defendants AMPLIA and TSTT at all relevant times have been and continue to, unlawfully distribute, display and broadcast Plaintiff's Content/and or the Zee Content in Trinidad & Tobago. Annexed hereto as **Exhibit E** are photographs of Defendant AMPLIA's office showcasing Plaintiff's Content in Trinidad & Tobago ("Photographs"); and, annexed hereto as **Exhibit F** is Defendant AMPLIA's advertising material which provides information of Plaintiff's Content being available through the Defendant AMPLIA's services in Trinidad & Tobago ("Promotional Material").

---

[4] The commercial terms have been redacted in the Exhibit D for confidential purposes.

59.     Defendant AMPLIA and TSTT are unlawfully using Plaintiff's Content and/ or the Zee Content and the Registered Marks (defined below) in Trinidad & Tobago. Annexed hereto as **Exhibit E** are photographs of Defendant AMPLIA's office showcasing Plaintiff's Registered Marks in Trinidad & Tobago.

60.     Also, Defendants kept exchanging various written communications from August 2017 until December 15, 2017 (until Defendant sent the Termination Letter). During this time, MASSY (i) did not make payments towards clearing the outstanding dues; (ii) complained about the Maintenance Services; (iii) assigned its obligations to TSTT and; (iv) its name was changed to Amplia Communications Ltd.

61.     All these actions of the Defendants were nothing but a way to set the stage and evade fulfilling the contractual obligations under the Distribution Agreement.

**DEFENDANT'S ILLEGAL ACTS**
**BREACH OF CONTRACT – THE DISTRIBUTION AGREEMENT**

62.     In the Term Sheet (Exhibit A), the Plaintiff and Defendant MASSY conceded to and agreed to the following:

> "***Channels offered****: Zee TV, & TV HD, Zee Cinema, Ten Cricket, Zing, Zee News, Zee World."*
>
> ***Minimum guarantees:*** *Minimum revenue guarantees based on Table A . . . .*
>
> ***Payment Terms:*** *Payment as laid out in Exhibit A is due on the 5th of each month for the current month. By way of example payment for the month April 2016 as per exhibit A will be due on April 5th 2016.*
>
> ***Early Termination****: Early termination at the end of Month 24 after paying for the prorated value from the period that is left."*

Case 1:18-cv-08503-VM   Document 7   Filed 09/19/18   Page 12 of 24


63.     The Parties, ATUL and MASSY, followed the Term Sheet for a period of time to the extent that, ATUL provided the signal for the licensed channels and Plaintiff's Content and, MASSY aired the Plaintiff's Content and paid to ATUL the Minimum Guarantees.

64.     In the Amendment no. 1 (**Exhibit C**), Plaintiff ATUL and Defendant MASSY conceded to and agreed to the following:

> "*The parties agree to delete …, from the Confidential Term Sheet – Massy Communications the "Agreement". Further in lieu of deletion…, MASSY Communications (a) seeks the OTT rights for the territory of Trinidad & Tobago and ATUL hereby provides the OTT rights to MASSY for the territory Trinidad & Tobago for the Term and (b) is hereby offered rights …in the territory.*
>
> *Expect as set forth in this Amendment, the Term Sheet dated December 22, 2015, is unaffected and shall continue in full force and effect in accordance with its terms.*"

65.     Plaintiff ATUL has performed all the obligations which were required to be performed by the Plaintiff under the Distribution Agreement.

66.     Defendant MASSY has breached the Distribution Agreement by failing, among other things, to abide by the payment terms, minimum guarantee and termination requirements as described above.

67.     Defendant MASSY has also breached the aforesaid contract by unlawfully assigning its rights, duties and obligations under the Distribution Agreement to TSTT.

## DEFENDANT AMPLIA'S AND TSTT'S ILLEGAL ACTS
## TRADEMARK INFRINGEMENT

68.     Defendants AMPLIA & TSTT have had notice of Plaintiff's trademarks and logos since the time Plaintiff produced and distributed media content with the Registered Marks.

69.     Defendants AMPLIA and TSTT also had notice of the Registered Marks since the date(s) of its registration in United States. Annexed hereto as **Exhibit G** are U.S Federal Trademark Registration Certificates.

70.     Defendants AMPLIA & TSTT also had notice of the Registered Marks since the date(s) of their registration in Trinidad & Tobago. Annexed hereto as **Exhibit H** is Trinidad & Tobago Trademark Registration Certificate.

71.     Upon information and belief, Defendant TSTT owns 100% shareholding of AMPLIA.

72.     Defendant TSTT is also aware of Plaintiff's Registered Marks from the time it separately entered into an agreement with Plaintiff ATUL in the year 2009 to air Plaintiff's Content/ Zee content in Trinidad & Tobago, so TSTT already had direct knowledge and was aware of Plaintiff's exclusive rights in and to Plaintiff's content.

73.     Defendants AMPLIA & TSTT have knowingly advertised, offered for sale and distributed programs and channels bearing the Registered Marks in Trinidad & Tobago for Defendant AMPLIA's & TSTT's commercial gain without paying any licensing fees to Plaintiff ATUL. Annexed hereto as **Exhibit E** are photographs of Defendant AMPLIA's office showcasing Plaintiff's Content in Trinidad & Tobago with the Plaintiff's Registered Marks.

74.     Defendant AMPLIA's & TSTT's conduct is willful, wonton, malicious, with full knowledge of Plaintiff's rights, and will continue after service of this Complaint unless enjoined by the Court.

75.     At all times relevant, the Defendants AMPLIA and TSTT have had actual knowledge of Plaintiff's exclusive rights to exploit the Registered Marks in the Territory.

76.    Plaintiff has expended large sums of money in advertising the Registered Marks, in the Territory, and, the entertainment industry and general public have identified the Registered Marks and the trade name, "Zee" or "Z", with Plaintiff's Content and the Zee Content.

77.    Defendant AMPLIA's & TSTT's acts and conduct are causing, and, unless restrained by this Court, will continue to cause, irreparable harm to Plaintiff, which cannot be adequately compensated by money damages.

78.    Defendant AMPLIA's & TSTT's conduct deprives Plaintiff of its ability to exploit the unique intellectual property represented by the Zee Content and Registered Marks.

## DEFENDANT AMPLIA'S AND TSTT'S ILLEGAL ACTS
## COPYRIGHT INFRINGEMENT

79.    Despite the above, Defendants AMPLIA & TSTT have continued to unlawfully distribute, display and broadcast Plaintiff's Content/and or Zee Content in Trinidad & Tobago without paying any licensing fees to Plaintiff ATUL. Annexed hereto as **Exhibit E** are photographs of Defendant AMPLIA's office showcasing Plaintiff's Content in Trinidad & Tobago.

80.    Plaintiff ATUL owns valid and exclusive copyrights in Zee Content and Atul Media Content.

81.    The copyrighted works are protected under 17 U.S.C. §§ 101 *et seq.*

82.    Plaintiff's Content is original and it has registered its Copyrights and has received Copyright Registration Certificates in the United States ("Copyright Certificates"). Annexed hereto as **Exhibit I** are the samples/ specimens of the Copyright Certificates of Plaintiff's shows which are being exploited by Defendant AMPLIA and TSTT.

83.     At all times relevant hereto, Defendants AMPLIA & TSTT have had actual knowledge of Plaintiff's exclusive rights and under copyright.

84.     Defendant AMPLIA's & TSTT's distribution, display and broadcast of Plaintiff's Content is without consent and authorization.

85.     Defendant AMPLIA's & TSTT's conduct is willful, wonton, malicious, with full knowledge of Plaintiff's exclusive rights.

86.     Defendants AMPLIA & TSTT profit directly by broadcasting Plaintiff's Content, and receive financial benefits directly attributable to their infringing activities.

87.     Defendant AMPLIA's & TSTT's conduct deprives Plaintiff of its ability to exploit the unique intellectual property of Plaintiff's Content.

88.     As a direct and proximate result of the Defendant AMPLIA's and TSTT's acts as alleged above, Plaintiff has already suffered irreparable damage and has sustained lost profits. Plaintiff will continue to suffer irreparable damage and sustain lost profits until the Defendant AMPLIA's and TSTT's wrongful acts as alleged in this complaint are enjoined by this Court.

89.     Unless permanently enjoined by this Court, Defendants AMPLIA & TSTT will continue their course of conduct and wrongfully use, infringe upon, and otherwise unjustly profit from Zee Content/ Atul Media Content in derogation of the Plaintiff's exclusive rights therein.

90.     Therefore, Plaintiff seeks a preliminary and permanent injunction to prohibit Defendants AMPLIA & TSTT from infringing the Zee Content/ Plaintiff's Content in any medium or form.

## FIRST CAUSE OF ACTION

### Breach of Contract against Defendant MASSY

91.     Plaintiff repeats, re-alleges, and incorporates by reference the above paragraphs 1 through 90 of this Complaint as if fully set forth herein.

92.     Plaintiff entered into a valid and binding Distribution Agreement with the Defendant MASSY.

93.     Plaintiff has performed all its obligations which were required under the Distribution Agreement.

94.     Upon information and belief, at all relevant times, Defendant MASSY breached the Distribution Agreement by not paying the Outstanding Dues.

95.     Defendant MASSY also unlawfully terminated the Distribution Agreement as it did not pay the Minimum Guarantee and/ or the monies owed for the remaining term of the agreement.

96.     Plaintiff ATUL provided Defendant MASSY with several reminders for making the payments and MASSY continuously assured Plaintiff that it would make the outstanding payments.

97.     At all relevant times, Defendant MASSY did not have the rights to assign the rights under the Distribution Agreement.

98.     On September 26, 2017, Defendant MASSY in its Acquisition Letter stated that on 31st July, 2017, the 100% share capital of Massy Communications Ltd. (Defendant MASSY) was acquired by Telecommunications Services of Trinidad & Tobago (Defendant TSTT).

99.     This assignment/ purchase of Plaintiff's Content was unlawful as MASSY unlawfully assigned or sold, its rights, duties and obligations under the Distribution Agreement to TSTT.

100.    Defendant MASSY till date has not made any payments towards clearing the Outstanding Dues and paying the Minimum Guarantee.

101.    By reason of the foregoing, Defendant MASSY is liable to pay the Outstanding Dues and Minimum Guarantee plus interest, attorney's fees, and costs; and such other relief as the Court deems appropriate.

## SECOND CAUSE OF ACTION

### Fraud against Defendant MASSY

102.    Plaintiff repeats, re-alleges, and incorporates by reference the above paragraphs 1 through 101 of this Complaint as if fully set forth herein.

103.     Upon information and belief, at all relevant times, Defendant MASSY assured and provided constant promises to make timely payments to Plaintiff under the Distribution Agreement.

104.    Defendant MASSY continued to show Plaintiff's Content without making any payments for the time period covering February 2017 through and including today under the Distribution Agreement and/or, sold the rights to TSTT without Plaintiff's prior knowledge or consent; MASSY *intended to defraud and delay* Plaintiff by reassuring Plaintiff of its payments while it sold its rights to TSTT.

105.    Plaintiff relied on Defendant MASSY's above mentioned [false] representations and thereby provided access to Plaintiff's Content upon the reliance and belief of Defendant MASSY's assurances that Defendant MASSY would make the promised payments under the Distribution Agreement without Plaintiff knowing that MASSY was in the process of unlawfully selling its rights to TSTT along with its access to Plaintiff's Content.

106.    Plaintiff duly demanded payments as aforesaid; Plaintiff sent numerous emails to Defendant MASSY requesting to fulfill its representation it made to the Plaintiff; but MASSY failed to pay and secretly dealt with TSTT to the detriment of Plaintiff.

107.    As a result of the fraudulent representations by MASSY, which MASSY made to Plaintiff knowing that they were false and that Plaintiff would rely on such statements, and on which the Plaintiff in fact did rely upon, Defendant MASSY owes Plaintiff Outstanding Dues plus compensation and penalties for defrauding Plaintiff and unlawfully assigning the rights to TSTT, and, Plaintiff further seeks interest on Outstanding Dues plus attorney's fees, costs, and any other relief as the Court deems appropriate.

### THIRD CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing against Defendant MASSY

108.    Plaintiff repeats, re-alleges, and incorporates by reference the above paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.    Defendant MASSY has made no effort to pay the outstanding dues to Plaintiff under the Distribution Agreement while simultaneously enjoying the benefits arising from the services provided by Plaintiff in good faith.

110.    Defendant MASSY has not responded to Plaintiff's Notice of Default or made any other good faith efforts to provide the Plaintiff with the outstanding balance owed for the services provided.

111.    Upon information and belief, MASSY profited from its unlawful assignment or sale of Plaintiff's Content to Defendants TSTT/AMPLIA.

112.    By reason of the foregoing, Defendant MASSY is liable to pay the Outstanding
Dues and Minimum Guarantee plus interest, plus attorney's fees, costs, and any other relief as
the Court deems appropriate.


### FOURTH CAUSE OF ACTION

### Trademark Infringement Pursuant to 15 U.S.C. § 1114 against Defendant AMPLIA and Defendant TSTT

113.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through
112, as if set forth fully herein.

114.    Upon information and belief, Defendant TSTT owns 100% shareholding of
Defendant AMPLIA.

115.    Separate and apart from, and, prior to, this matter, TSTT had previously entered
into a System Operator Agreement in the year 2009 to air plaintiff's content/ zee content in
Trinidad & Tobago ("TSTT's System Operator Agreement"), so TSTT already had direct
knowledge and was aware of Plaintiff's exclusive rights in and Plaintiff's content.

116.    Plaintiff owns the exclusive rights to the Registered Marks in the Territory for the
purpose of effecting the distribution and the protection/ enforcement of said rights against
infringers of the Zee programming services. Annexed hereto as **Exhibit G** are U.S Federal
Trademark Registration Certificates and Annexed hereto as **Exhibit H** are Trinidad & Tobago
Trademark Registration Certificates.

117.    Defendant AMPLIA's and TSTT's unauthorized use of the Plaintiff's Content/
Zee Content and the Registered Marks with reference to distribution constitutes infringement in
violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 to the substantial and irreparable
injury of the public and of Plaintiff's business reputation and goodwill.

118.    Defendant AMPLIA's and TSTT's acts have been deliberate, willful, intentional and purposeful, in reckless disregard of and with indifference to Plaintiff's rights.

119.    As a direct and proximate result of Defendant AMPLIA's and TSTT's acts and conduct, the Plaintiff has sustained and will continue to sustain irreparable injury for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants AMPLIA and TSTT will continue to infringe Plaintiff's rights to exclusive use of the Registered Marks in the Territory. Accordingly, the Court should enjoin and restrain Defendants AMPLIA and TSTT from committing any further such acts.

## FIFTH CAUSE OF ACTION

### Direct Copyright Infringement pursuant to 17 U.S.C. § 501, et seq. against Defendant AMPLIA

120.    Plaintiff repeats and re-alleges the allegations set forth in the above paragraphs 1 through 119, as if set forth fully herein.

121.    Plaintiff is the exclusive rights holder of Plaintiff's Content/ Zee Content for the Territory; and, Plaintiff has the exclusive rights to broadcast, distribute, display and license certain premium cable television programming services in the United States. Annexed hereto as **Exhibit I** are Copyright Certificates.

122.    Defendant AMPLIA has infringed Plaintiff's exclusive rights under copyrights, including the rights of distribution, display and broadcast, in violations of 17 U.S.C. §501 *et seq* of the Copyright Act.

123.    Defendant AMPLIA's acts have been deliberate, willful, intentional and purposeful, in reckless disregard of and with indifference to Plaintiff's rights.

124.     As a direct and proximate result of Defendant AMPLIA's foregoing acts and conduct, Plaintiff has sustained and will continue to sustain irreparable injury for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant AMPLIA will continue to infringe Plaintiff's Content/ Zee Content. Plaintiff is entitled to injunctive relief pursuant to 17 U.S.C. § 502.

## SIXTH CAUSE OF ACTION

### Fraud against Defendant AMPLIA

125.     Plaintiff repeats, re-alleges, and incorporates by reference the above paragraphs 1 through 124 of this Complaint as if fully set forth herein.

126.     Defendant AMPLIA provided an alleged Unlawful Termination Letter.

127.     AMPLIA knowingly, recklessly, and maliciously made a false representation with the intent that Plaintiff rely on this [false] representation and Plaintiff, in fact, did rely on the [false] representation and believed that AMPLIA would no longer show the Plaintiff's Content in Trinidad & Tobago.

128.     However, Defendant AMPLIA continued to show Plaintiff's Content even after its alleged termination letter. As a result of the fraudulent representation on which the Plaintiff relied, Plaintiff suffered damages.

129.     As a result of the fraudulent representation on which the Plaintiff relied, Defendant AMPLIA owes damages, plus interest, attorney's fees, costs, and any other relief as the Court deems appropriate.

## SEVENTH CAUSE OF ACTION

### Inducement and Contributory Infringement against Defendant TSTT

130.     Plaintiff repeats and re-alleges the allegations set forth in the above paragraphs 1 through 129, as if set forth fully herein.

131.     Defendant TSTT has knowingly induced, caused, and/or materially contributed to the unauthorized distribution of Plaintiff's Content/ Zee Content with Defendant AMPLIA.

132.     Defendant TSTT's conduct constitutes contributory infringement of Plaintiff's Content/Zee Content.

133.     Defendant TSTT's acts have been deliberate, willful, intentional and purposeful, in reckless disregard of and with indifference to Plaintiff's rights.

134.     Separate and apart from, and, prior to, this matter, TSTT had previously entered into a System Operator Agreement in the year 2009 to air Plaintiff's Content/ Zee Content in Trinidad & Tobago, so TSTT already had direct knowledge and was aware of Plaintiff's exclusive rights in and to Plaintiff's content.

135.     At the time that TSTT bought MASSY and took ownership of MASSY's rights to distribute Plaintiff's content, TSTT already knew of Plaintiff's rights in and to Plaintiff's Content.

136.     As a direct and proximate result of Defendant TSTT's forgoing acts and conduct, Plaintiff has sustained and will continue to sustain irreparable injury for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant TSTT will continue to infringe Plaintiff's rights. Plaintiff is entitled to injunctive relief pursuant to 17 U.S.C. 502.

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.  That judgment be entered for Plaintiff and against the Defendants on each of Plaintiff's claims for relief;

2.  For a preliminary and permanent injunction that Defendants and their agents, servants, employees, attorneys and those acting in concert or participation with any of them:

    i.   Delete and disable access to Plaintiff's Content/ Zee Content, including but without limitation, by deleting all copies of Plaintiff's Content/ Zee Content from any database, server, or other storage device owned or controlled by Defendants;

    ii.  Cease and refrain from accessing, transmitting, distributing, broadcasting and/or otherwise publicly displaying and/or infringing Plaintiff's Content/ Zee Content;

    iii. Refrain from using the Registered Marks "Z" and "Zee" or any other confusingly similar mark in connection with the sale, advertisement, marketing or promotion of any goods or services or any other similar infringement of Plaintiff's exclusive rights to use the Registered Marks "Zee" and "Z"; and

    iv.  Within thirty (30) days after service of an order from the Court be required to file with the Court and serve upon Plaintiff's attorneys a written report under oath setting forth in detail the manner in which Defendants have complied with the foregoing paragraphs.

3.  For maximum statutory damages with respect to each copyrighted work and trademark infringed, or for such other amount as may be proper or, alternatively, at Plaintiff's election, full restitution, actual damages suffered as a result of the infringement, an equitable accounting and payment of all revenues and/or profits wrongfully derived by Defendants from their infringement, and breach of contract.

4.     Any and all damages sustained by Plaintiff resulting from Defendants' wrongful and infringing acts.

5.     Damages for Defendant MASSY' breach of the Distribution Agreement together with interest thereon.

6.     For Plaintiff's attorney's fees and full costs.

7.     That Plaintiff be awarded treble damages, enhanced, punitive and exemplary damages against Defendants.

8.     That Plaintiff be awarded pre-judgment interest on its judgment.

9.     For such other and further relief as this Court deems just and proper.


Dated:  New York, New York
        September 18, 2018


                                    MEGHA BHOURASKAR (MB8888)
                                    LAW OFFICES OF MEGHA D. BHOURASKAR
                                    Attorney for Plaintiff
                                    139 Fulton St,
                                    New York, NY 10038
                                    TEL: (212) 571-1770
                                    FAX: (212) 571-1771
                                    Email: megha@mdblawoffices.com